The next call of the day is 5-14-0252 in Matter of A.A., Counselor Aperstein. May it please the Court, Counsel, I'm Edwin Anderson, Counsel for Matthew A. Your Honor, in this case we ask the Court to reverse the decision that gave the voluntary I apologize for all the issues in this case. Being a case involving children, we've got a lot of issues. I'm trying to be brief to sort of give you a little bit of a roster of initials and who's related to who. I hope it's of some benefit. My sense of this case is that we have to start with what I think is the foundation of the law with regard to children and their rights, and that is parents' patriarch. The concept is simply that the government is the supreme guardian of the child, always acts in the best interest of the child. I contend that that's why the Illinois Supreme Court has stated clearly, unambiguously, that all decisions made by the court affecting children are being made with the best interest of the child as the guiding star of what it does. Based on that, I would say that the frame in which any court paints a picture of what the rights of the child are sits in the frame of the best interest of the child. The foundation of any decision it makes is what is the best interest. It's our contention that in this case the circuit court never got to that point. It looked at the rogue application of we have a DNA test that says court H is the biological father. He has the parental rights. Matthew A, though he has a voluntary adoption prayer code, has no rights. It's our contention that because the judge came at it from the wrong point and didn't have the best interest as its foundation, his decision was error. Let me ask you this. If a best interest analysis is relevant and makes sense once the parties are at issue on various aspects, and that's usually where we see it, that's usually where it's applied, how does a trial court making a factual determination of who the parties actually are and making it on a finder of fact basis as opposed to a best interest discretionary call constitute reversible error? Wouldn't a factual determination if there's an issue as to who the parties actually are have to be made first? And then once one determines who, in fact, the parties are, then you make a best interest determination as to the disposition going forward. I guess I see this as suggesting that the fact of biological parenthood is a hard cutoff that is inescapable to the court. Well, I'm not – let me rephrase it then. I'm not saying that determination of parenthood is a hard cutoff. I'm saying in order to determine who would be in a position to assert best interest, don't you have to make a factual determination of who, in fact, the parties are? I would agree with you. In this instance, we know that Matthew A. has the legal right as the father until the court says he doesn't. He signed that voluntary acknowledgment. So he has rights. And the decision here is whether to uphold those rights or – and so the judge is still in a position where he's going to be making a decision. And I would say we're not disqualifying Matthew A. as a party off the bat and saying you don't even belong in our court because we have this DNA test that says Court H is the father. So I guess I'm not willing to acknowledge that the judge has no discretion in evaluating best interest between biological father and the VAP father. Well, it's not really a question of who's a party. It's a question of who's a parent. And then we have statutory schemes that determine what a parent's rights are versus a non-parent. And a non-parent can seek custody of a child under certain circumstances, but he has to prove the parent's unfit as opposed to a best interest standard. So, you know, I mean, I guess another question is, you know, why shouldn't the court first determine, you know, who are the parents? Then we know what standard has to be applied in any hearing to determine who gets custody or visitation or whatever. Well, I mean, I guess then we get into the – And so, I mean, do you apply best interest to decide who is a parent or is that a – Well, when you're in a situation a little bit unique like this where you have the VAP father who is ready, willing, and able to be the parent and you have a deceased individual who can't ever be a parent, I would say that you can't go by hard, fast analysis of what biology says. Now, I think the guardian ad litem's point was statute says natural parent, and natural parent is biological parent, end of story, that's that. And I think that's essentially what the judge found here. And our intention is it goes beyond that. Well, and I think your argument has some appeal because let's take a different circumstance. Let's say the child's 16 and has thought this person's his father all along, and the putative father has raised him all this time, you know, and then to just say you're no longer a parent, you have no rights or less rights or whatever. Well, certainly, you know, where it's a minor who – biological parent can step in and say, I'm taking you to Alaska with me. Say goodbye to all your friends because you're my kid and we're going. We're not in that position here, but in this instance we do have the interveners who want a role in the child's life. And it's only speculative what role they can have and what effect they'll have on the child. What we do know from the record and from what was presented to the court is that disinterested parties like the DCFS worker, the CASA volunteer, both viewed Matthew A. as someone who could and ought to remain as the legal father and was able – if withheld from DCFS in the plan that DCFS was trying to set up, could be a father to this child. My sense of the case is that the judge viewed this as I have a – as the judge has indicated. We start with this decision. Who qualifies to even be in this case? And only then do we think about these other factors. And my sense of the law from the Supreme Court decisions is that still beyond – behind all of that is what's the best interest? And the court acting in an equitable role, in a parent's patriarchal role, can say, wait a second, I have a deceased father who can be of no benefit to this child, and I have a live father who wants to be. And in this instance, we can make a decision that the best interest of this child is that Matthew is the father and retains his rights. And to refresh my memory here, the mother was declared unfit? The children were taken by DCFS. There were four children, and they were placed in temporary custody of DCFS with a plan in development to intern the children to both of the – Caitlin S. and Matthew. Well, I thought the only – Matthew was the actual father of two of the four. Is that correct? Matthew is – Matthew is the biological father of the child P.S. Only one? Yes. He believes that he was the biological father of A.A., the child in this case. And we learned through the DNA testing that Court A, she's deceased, is the biological father. There's been no termination of the mother's parental rights? Not to my knowledge. Okay. She's still – The intent is to return the children to the mother, and Matthew is the father. And I think it's worth noting, too, in terms of the practical aspects of what's going to happen in this case, there's no dispute that Matthew is the parent of P.S., and P.S. and A.A. are close enough in age that they're in the same foster home. They're being raised together. So Matthew is going to be in P.S.'s life, and he'll be there to be in A.A.'s life. It's just a matter of whether he then has that additional legal right and responsibility to have a say in what happens to A.A. And that's sort of where the rubber meets the road in these cases is that if the father, the putative father, doesn't have that legal recognition, he doesn't have, say, any educational decisions and just practical benefits. Is the kid going to take a trip out to his partner's game, or is he going to stay here? As the dad, he gets to have a say in that. So I don't want to belabor the point. Again, I think that the judge pretty much worked off the order that the GAO provided him. It was pretty much a road application of biological father is the father under the law, and the VAP father's rights can be terminated. And our argument is that that's not the proper determination. The best interest of this child in this case is that Matthew remains the father. As a side note, we do argue that because Court H shouldn't be recognized as the legal father, the interveners don't have a right to be in the case. I won't spend a lot of time talking about that. I'm sure counsel will have her sense of the case. Are there any other questions or comments? No. So the status, let's assume that the decision stands that Matthew H or whatever, Matthew H is legally not the father. That does not necessarily mean that his ability to be part of this child's life is precluded. It's a different status without certain parental rights. Is that basically the reality of the situation and the determination? The city PS, which is his biological son, remains in the same setting with AA. Now, all those children are the children of Caitlin. So if Caitlin S resumes parental rights and those children are all with her, then one could see that he would still physically be around the children. Right. Practically speaking, I guess you could draw up a flow chart to see all the different places kids go. He's not daddy. He's Uncle Matt. Yeah. And he might at some point be able to get sole rights to PS, but he'd have no say in what happens to AA. Right. So to me, the practical aspect of this is he was there when the child was born. He knew he might not be the father. He's still voluntarily assigned that VAP. He's indicated he wants to be the father of this child, wants the legal responsibility. And he's an employed man who has the ability to provide that support. And the best resolution for this child is that he maintain his parental rights as the father. So we'd ask the court to reverse the decision of the circuit court for his rights as the father. Thank you. Thank you. Thank you. Good morning, Your Honors. It's nice to see you all again. May it please the court and may it please counsel. I come here this morning representing the position of the appellees in this case, which would be the mother of AA, Caitlin S., and the guardian animal item in the Jefferson County State's attorney. We, of course, believe that the trial court applied the proper standard and didn't err in granting the petition to vacate Matthew A.'s parental relationship with AA. Now, we're looking at the Parentage Act, and according to Section 7B of the Parentage Act, the child, the natural mother or the presumed father who married the mother before or after the child's birth can bring an action to invalidate the presumed father's parental relationship with the child. And in the case of Andre MM, which is cited in our brief, the court held that the voluntary acknowledgment of paternity, or the BAP as we're calling it, was binding only on the BAP father and the mother and not on the child. Therefore, of course, the child could bring the action to terminate the BAP father's parental relationship with him. Now, the next question here is what standard of proof should we apply? And that's set forth in our brief in reference to Andre's marriage to Pam Smith, and that case says the burden's on the party challenging the existence of the parent-child relationship to establish its invalidity by clear and convincing evidence. Now, the DNA testing here clearly established there is no biological relationship between Matthew A. and the minor. And significantly, nowhere in the Parentage Act is there any mention that an analysis of the best interests of the child should be undertaken before a parent-child relationship can be declared to not exist. In fact, the only place in the Parentage Act where it talks about best interests of the child is in Section 14, where the trial court, in making its judgment of parentage, is directed to consider the best interests of the child in terms of custody, visitation, child support, and so forth. And that's in conformity with all the other acts dealing with juveniles, which would be the Juvenile Court Act, Probate Act, and the Illinois Marriage and Dissolution of Marriage Act, where the parental, where the parent-child relationship is already established and it's not subject to nullification except by a judicial termination of parental rights. Now, even if the best interests of the child standard is the one that should be applied in this case, the best interests of A.A. do not necessarily dictate that Matthew A. should remain the legal father due to some alleged bond between him and A.A. A.A. was taken from the family when he was seven weeks old. If he's formed a bond with anybody, he's formed it with the foster parents. They were the ones who fed him, took care of him when he was sick, provided for him, and so forth. Now, Matthew may have been there when he was born, may have held him, may have rocked him to sleep, may have changed his diapers, and may have had supervised visitation with him since he was taken by DCFS. That's not enough to establish that leaving him, that leaving Matthew A. as the legal father is necessary under the best interests of the child test. Is there anything in the Parentage Act, assuming that the V.A.T., V.A.P., the vacation of that is upheld, is there anything in the Parentage Act that would preclude a court using the best interests standard to say Matthew is part of this child's life? As indicated in interest, we've actually got a live male who wants to be involved in this kid's life and making provision for that. There's nothing in the Parentage Act that would preclude that. So your position is that stage where you apply the best interests in a situation like this would be after determination of parentage? Yes, that's correct. Okay. Now, the point you made about Matthew's relationship with A.A. is that he has to share some of the blame with Caitlin for the havoc in that household before these kids were taken away. He did nothing proactive to get help for her. It would have been clear to him that she was having problems handling all of these kids, four kids under the age of five, and she's apparently got some sort of a problem with postpartum depression or at least some form of depression. He didn't do anything proactive to help her, to help the household, to help the family. He just reacted when DCFS entered on the scene. We don't think, well, all things considered, we just do not believe that the trial court would have overwhelmingly found that it was in A.A.'s best interest to maintain their parent-child relationship. So now Mr. Anderson makes a big deal out of the fact that, well, Court H is dead, and he can't have any relationship with A.A. because he can't take him to the ballgame, he can't go to parent-teacher conferences, can't buy him Christmas presents and so forth and so on. But Court H left a family behind that's very interested in the welfare of this child. Now, of course, it may later be determined that it's in the best interest of the child that the child be allowed to have a relationship with the grandparents and the aunts and uncles and so forth. The very same way the court might consider it's in the best interest that the child have visitation with Matthew A. Now, at this point, the case that we're in now, the parents are supposed to go through parenting classes and complete a service plan that DCFS has set up to help better what's going on in the family. Like I said, there's four children under the age of maybe five or under in this case. The two older children, custody to them was given to their biological father, and I'm thinking the record shows he was a metropolis or paro or someplace. Matthew A. is the father of the third child, and Court H. is the father of the fourth child. So it may be in the best interest of the child to have all of these kids have visitation with each other, grandparents have visitation with A.A., Matthew A. be involved in A.A.'s life, but he just would not have the status of a natural parent. And we would therefore ask this court to affirm the trial court's ruling as A.A., and therefore allow matters to proceed further in these trial court cases that are still pending. Does anybody have any questions? No questions. Thank you, counsel. Report. Petitioner. Petitioner's brief itself notes that the legislature's intent in the Heritage Act is to provide support to minors, and that's what Furman Matthew, as the father, does. He's prepared to be the support of those minors. Where does he work? At the time of this case, he was working at the maintenance company for General Tire that does the cleaning of the factory. I think there's indication in the record that that is a very long and difficult job. I think he was trying to get on full time at the tire factory. The court asked if there's anything in the Heritage Act that would preclude something that recognizes that Matthew can be part of A.A.'s life. And I wouldn't disagree that a court can make a docket entry that shows or an order that shows he should have involvement, but I don't think what it can do is give him the parental right to have a say in the child over the mother's situation. And, you know, hopefully these people always get along and are of the same mind of how this child should be raised. And with DCFS's assistance, they get it together and have a good, solid life. But we all know it doesn't always work that way. Parents get it across purposes and can agree on what pair of socks to put the child in in the morning. And when it comes to that, then it's important that the man who stands as the father has the legal right to some recourse on things like what school, where is he going to go on the weekend. And that's why it's important to have more than just some loose language that says he's got a right to be in his kid's life, but that he is in fact the legal father, which is what the DAP does. Again, you know, the counsel suggests that there's nothing in the Parentage Act that specifically references that best interest of the child. But I would say that it doesn't have to be in the Parentage Act because it's the foundation of the Parentage Act. You know, when you're up on the scaffold that's erected off of the base, you don't have to keep pointing back to the base and saying, that's why I'm up here. The foundation is the best interest of the child. The state says we're going to govern everything you do with an eye towards what's going to be a good outcome for this kid. And that's what the Parentage Act is set out to do. That's what the juvenile code is set out to do. And that's what the court has to have in mind when it takes action with regard to the future of a child. And in this instance, its most fundamental decision of the future of this child is who's got the legal right to be a father. Is it going to be a deceased individual? Is it going to be a wide-ranging man? And our contention is that this court should find that decision below is an error, reverse it, and, you know. So you're basically arguing it's the legislative intent that the overriding standard in the Parentage Act is best interest of the child. I think everything that's the central basis that we have. Is there, and there probably isn't, but is there any legislative history that would indicate that that was the intent of the legislature, either generally or specifically on this section? I can make an effort to find that and provide a report, but I don't know offhand. Thank you. Thank you. Court will be in recess until 1 o'clock.